948 F.2d 1236
 20 U.S.P.Q.2d 1712
 Graham HOLMWOOD, Erik Regel, Paul-Ernst Frohberger, Gerhard
Jager, Karl Heinz Buchel, Wilhelm Brandes and
Klaus Lurssen, Appellants,
v.
Balasubramanyan SUGAVANAM, Paul A. Worthington and John M.
Clough, Appellees.
 No. 91-1144.
 United States Court of Appeals,
Federal Circuit.
 Nov. 5, 1991.
 
 Leonard Horn, of Sprung Horn Kramer & Woods, New York City, argued, for appellants. With him on the brief was Karl F. Milde, Jr.
 Mark G. Paulson, of Cushman, Darby & Cushman, Washington, D.C., argued, for appellees. With him on the brief was Paul N. Kokulis.
 Before NEWMAN, ARCHER, and RADER, Circuit Judges.
 RADER, Circuit Judge.
 
 
 1
 Graham Holmwood, et al., (Holmwood) appeal from the decision of the Board of Patent Appeals and Interferences in Interference No. 101,866 (September 13, 1990). The Board held that Holmwood failed to establish a reduction to practice before the effective filing date of the senior party, Balasubramanyan Sugavanam, et al. (Sugavanam). The Board awarded priority to Sugavanam. This court reverses.BACKGROUND
 
 
 2
 The interference below involved Holmwood's application, Serial No. 458,087, filed January 14, 1983, and Sugavanam's application, Serial No. 596,149, filed April 2, 1984. Both parties made and marketed overseas the chemical fungicide corresponding to the count.
 
 
 3
 Sugavanam filed his first United States application on March 2, 1982, and two U.K. applications on October 16 and 29, 1981. Due to the earlier U.K. filings, the Board accorded Sugavanam senior party status. Holmwood filed a German application on January 27, 1982.
 
 
 4
 Before the Board, Sugavanam relied on its October 16, 1981 filing date, and Holmwood tried to show that he reduced his invention to practice in the United States before October 16, 1981. Holmwood's assignee, Bayer Aktiengesellschaft, a German corporation, sent the fungicide into the United States to verify positive test results obtained previously in Germany. Dr. Walter Zeck, biological research manager for Mobay Corporation's Agricultural Chemicals Division in Vero Beach, Florida, received Holmwood's compounds on or about September 16, 1980. Mobay is a United States affiliate of Bayer.
 
 
 5
 Upon receipt of the compounds, Dr. Zeck began a series of standard tests for fungicidal effectiveness. Two laboratory assistants performed the tests and filed reports on the results in October 1980. Thus, Dr. Zeck received and tested compounds within the count in the United States before October 1981.
 
 
 6
 Holmwood introduced the test results into evidence at the Board through Dr. Zeck's deposition testimony. The test results showed that the compounds worked well as fungicides. Based on these results, Dr. Zeck testified about the compounds' fungicidal effectiveness. Sugavanam objected to portions of Dr. Zeck's testimony and the test results as hearsay.
 
 
 7
 Following considerable legal argument, the Board admitted the reports, but refused to give any weight to Dr. Zeck's reports or testimony in reaching its conclusion. After ignoring Dr. Zeck's tests and testimony, the Board concluded that Holmwood had not shown that he had reduced his invention to practice in the United States before Sugavanam's U.K. filing date.
 
 OPINION
 
 8
 This court reviews the Board's factual findings under a clearly erroneous standard. Coleman v. Dines, 754 F.2d 353, 356, 224 USPQ 857, 859 (Fed.Cir.1985). Reduction to practice is a legal determination subject to de novo review. Hybritech, Inc. v. Monoclonal Antibodies, Inc., 802 F.2d 1367, 1376, 231 USPQ 81, 87 (Fed.Cir.1986), cert. denied, 480 U.S. 947, 107 S.Ct. 1606, 94 L.Ed.2d 792 (1987). Therefore, this court reviews the Board's factual findings supporting its legal conclusions about reduction to practice for clear error. Id., 802 F.2d at 1376, 231 USPQ at 87; see 35 U.S.C. § 102(g) (1988).
 
 
 9
 To establish a date of invention, a party may not rely upon knowledge, use, or activity which took place in a foreign country, except as provided by 35 U.S.C. § 104 (1988). Holmwood, as junior party, had the burden of proof in the interference to show priority by a preponderance of the evidence. Morgan v. Hirsch, 728 F.2d 1449, 1451, 221 USPQ 193, 194 (Fed.Cir.1984). To defeat Sugavanam, Holmwood undertook to show that he reduced his invention to practice in the United States before Sugavanam's U.K. filing date.
 
 
 10
 To prove a reduction to practice, an applicant must show that "the embodiment relied upon as evidence of priority actually worked for its intended purpose." Newkirk v. Lulejian, 825 F.2d 1581, 1582, 3 USPQ2d 1793, 1794 (Fed.Cir.1987). Holmwood presented to the Board Dr. Zeck's testimony and test results on the compounds performed in the United States before October 1981. This evidence showed that the compounds worked for their intended fungicidal purpose.
 
 
 11
 This court applies a "rule of reason" standard when reviewing the sufficiency of evidence about reduction to practice. Coleman, 754 F.2d at 360, 224 USPQ at 862. This rule requires the Patent and Trademark Office to examine, analyze, and evaluate reasonably all pertinent evidence when weighing the credibility of an inventor's story. Id. Under this rule of reason, the Board properly admitted Dr. Zeck's testimony, but improperly omitted it when considering the evidence.
 
 
 12
 Dr. Zeck was the most competent witness to present the United States test results. The record shows that Dr. Zeck supervised and directed the testing. Dr. Zeck chose to conduct a series of fungicidal tests which are standard within the industry. The record shows that Dr. Zeck had skill in the administration of these tests. Moreover, he had skill in supervising and directing such standard tests in a competent scientific manner.
 
 
 13
 Although he used two laboratory assistants to handle the samples and record results, Dr. Zeck alone knew the chemical composition of the various compounds. The record does not show that using lab assistants in any way impaired the scientific accuracy of the tests. The lab assistants, Mr. Tippin and Mr. Tillman, operated as Dr. Zeck's "blind hands" to conduct the tests and record the results. Thus, the lab assistants could testify to little more than that they followed Dr. Zeck's directions in handling the chemical samples and recording test results. Any testimony from the lab assistants would have been cumulative or inferior to Dr. Zeck's testimony.
 
 
 14
 The record indicates that the testing procedures at the Mobay facility include the administration of standard tests in a highly organized program designed by Bayer to specifically test chemical compounds for fungicidal activity. Dr. Zeck directed and supervised the testing within this program. The record makes clear that the tests conducted are standard within the industry and are known to Dr. Zeck.
 
 
 15
 The Board noted that the technician performing the perfunctory aspects of the testing is not necessarily the most satisfactory witness with respect to test results or data. The Board also stated that the trained supervisor who is intimately aware of the everyday operation of the testing laboratory, and who is responsible for the results, is the one who can be relied on for the most persuasive evidence.
 
 
 16
 Nonetheless, the Board attached negative implications to Holmwood's failure to call Mr. Tippin and Mr. Tillman to testify about their ministerial role in the testing. The Board concluded that Dr. Zeck was not "the most satisfactory witness concerning the testing of the samples." This court disagrees.
 
 
 17
 Under the rule of reason, this court cannot ignore the realities of technical operations in modern day research laboratories. Breuer v. DeMarinis, 558 F.2d 22, 29, 194 USPQ 308, 314 (CCPA 1977). Recognizing these realities, a junior technician performing perfunctory tasks under the supervision of a senior scientist is not generally necessary to verify the reliability of evidence about scientific methods or data. In the absence of indicia calling into question the trustworthiness of the senior scientist's testimony, the rule of reason permits the Board to rely on the trained supervisor's testimony to ascertain scientific methods or results.
 
 
 18
 Due to Dr. Zeck's careful supervision of the testing program and the indicia of reliability in the test program itself, the Board's refusal to accord full weight to Dr. Zeck's testimony contravenes the rule of reason. Under these circumstances, such a refusal was unreasonable. The Board clearly erred in determining that, without his assistants' testimony, Dr. Zeck's testimony lacked probative weight.
 
 
 19
 The Board also characterized Dr. Zeck's testimony as lacking "sufficient corroboration." The Board's use of the term "corroboration" is misplaced. Only an inventor's testimony needs corroboration. Borror v. Herz, 666 F.2d 569, 573, 213 USPQ 19, 22 (CCPA 1981). Dr. Zeck's testimony did not require "corroboration" as that term is used in interference practice. Rather, the Board must view the evidence as a whole to determine if the inventor's story withstands careful examination. Holmwood offered Dr. Zeck's testimony and the test results as corroboration for his reduction to practice in the United States before October 16, 1981.
 
 CONCLUSION
 
 20
 This court determines that the Board clearly erred in weighing the evidence. Dr. Zeck supplied reliable, unrebutted evidence showing Holmwood's invention worked for its intended purpose. Giving proper weight to the evidence, this court determines that Holmwood showed by a preponderance of the evidence that his invention was reduced to practice in the United States before Sugavanam's effective filing date, October 16, 1981. Accordingly, the decision of the Board is
 
 
 21
 REVERSED..