**DOW CHEMICAL COMPANY,**
Plaintiff,

v.

**ASTRO–VALCOUR, INC., Defendant.**

No. 95–CV–1357.

United States District Court,
N.D. New York.

Aug. 15, 2000.

As Amended Sept. 5, 2000.

Lieberman & Nowak, LLP, Keith D. Nowak, of counsel, New York City, Dow Chemical Company Legal Dep't, Bruce M. Kanuch, of counsel, Midland, MI, for plaintiff.

Kenyon & Kenyon, Robert F. Perry, of counsel, New York City, Smith & Ozalis, Sheila A. Ozalis, of counsel, Easton, CT, for defendant.

### MEMORANDUM–DECISION and ORDER

HURD, District Judge.

### I. INTRODUCTION

The Dow Chemical Company ("Dow") commenced this action alleging patent infringement by defendant Astro–Valcour, Inc. ("AVI"), pursuant to 35 U.S.C. § 271. AVI asserted the affirmative defense of patent invalidity. The claims-at-issue were construed by Memorandum–Decision & Order. *See Dow Chem. Co. v. Astro–Valcour, Inc.,* 47 F.Supp.2d 294 (N.D.N.Y.1999)(McAvoy, C.J.). AVI now moves for summary judgment on that defense. Dow opposes that motion and cross-moves for dismissal of the affirmative defense and a finding of infringement [1] by AVI. Oral argument was heard on January 14, 2000, in Utica, New York. Decision was reserved.

---

1. Dow initially moved for a finding of willful infringement, but has withdrawn that request without prejudice to renew pending further discovery.

## II. FACTS

Prior to the middle 1980's manufacturers commonly used chlorofluorocarbon blowing agents to produce polyethylene foam. Environmental concerns prompted the search for a more environmentally-friendly, cost-effective blowing agent.

Non-party Japan Styrene Paper Company ("JSP") held a Japanese patent for producing foam using a non-chlorofluorocarbon blowing agent. JSP filed a United States patent application in 1968. The U.S. patent, No. 3,808,300, (the "Miyamoto patent") was issued on April 30, 1974. In 1983 AVI purchased a license from JSP to use the Miyamoto patent process, which disclosed the use of various butanes as blowing agents and a glycerol monostearate ("GMS") stability control agent.

According to AVI, it produced foam following the teachings of the Miyamoto patent, using isobutane as the blowing agent, in a laboratory on March 3, 1984. On August 22, 1984, AVI made foam following the Miyamoto patent teachings, using isobutane as the blowing agent, on its production extruder at its Glen Falls production facility. Due to the flammability of isobutane, safety concerns played a major role as AVI began the process of converting to the use isobutane as a blowing agent at its Glen Falls facility. Difficulties with the conversion ensued, however, and AVI abandoned the conversion at Glen Falls and, in the winter of 1985/1986, built a new facility in Plymouth, Indiana. Initially AVI produced foam at the plant using chlorofluorocarbon blowing agents such as Freon, but then converted to use of isobutane. AVI first manufactured on a production scale and sold foam following the teachings of the Miyamoto patent using isobutane as the blowing agent and a GMS stability control agent in the August/September 1986 time frame.

Meanwhile, Dow conceived a process using isobutane as a blowing agent to manufacture polyethylene foam on August 28, 1984. Dow reduced its invention to practice on September 13–14, 1984. Dow filed patent applications on December 24, 1985, disclosing the process of producing foam using an isobutane blowing agent with a GMS stability control agent. U.S. Patent No. BI 4,640,933 ("the '933 patent"); U.S. Patent No. 4,694,027; and U.S. Patent No. 4,663,361 (collectively the "Park patents") were issued in 1987. The Miyamoto patent was not referenced as prior art on the Park patents. Dow requested Reexamination of the '933 patent in 1994, questioning the patentability of the Park process due to the existence of the Miyamoto patent, among others. A Certificate of Reexamination affirming the patentability of the '933 patent was issued in September 1996.

Dow alleges that AVI has been and is infringing the Park patents by its production of foam meeting the limitations of the claims-at-issue of these patents.[2] AVI concedes that it is manufacturing and selling foam meeting limitations of the claims-at-issue of the Park patents.

## III. DISCUSSION

### A. Summary Judgment Standard

Summary judgment must be granted when the pleadings, depositions, answers to interrogatories, admissions and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Richardson v. New York State Dep't of Correctional Service*, 180 F.3d 426, 436 (2d Cir.1999). Facts, inferences therefrom, and ambiguities must be viewed in a light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct.

---

**2.** Dow also initially alleged infringement of two "perforation patents," U.S. Patent No. 5,424,016 ("the '016 patent") and U.S. Patent

No. 5,585,058 ("the '058 patent"). All claims relating to the '016 and '058 patents were dismissed by stipulation of the parties.

1348, 89 L.Ed.2d 538 (1986); *Richardson,* 180 F.3d at 436; *Project Release v. Prevost,* 722 F.2d 960, 968 (2d Cir.1983). Once the moving party has met the initial burden of demonstrating the absence of a genuine issue of material fact, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56; *Liberty Lobby, Inc.,* 477 U.S. at 250, 106 S.Ct. 2505; *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co.,* 475 U.S. at 587, 106 S.Ct. 1348. At that point the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.,* 475 U.S. at 586, 106 S.Ct. 1348. To withstand a summary judgment motion, sufficient evidence must exist upon which a reasonable jury could return a verdict for the nonmovant. *Liberty Lobby, Inc.,* 477 U.S. at 248–49, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co.,* 475 U.S. at 587, 106 S.Ct. 1348.

### B. Invalidity pursuant to 35 U.S.C. § 102(g)

AVI seeks summary judgment on its affirmative defense that the Park patents are invalid. In opposition Dow argues that the Park patents are valid and seeks dismissal of the defense.

■ Section 102(g) of Title 35 of the U.S.Code provides for entitlement

to a patent unless—(g) before the applicant's invention thereof the invention was made in this country by another who had not abandoned, suppressed, or concealed it. In determining priority of invention there shall be considered not only the respective dates of conception and reduction to practice of the invention, but also the reasonable diligence of

one who was first to conceive and last to reduce to practice, from a time prior to conception by the other.

Thus, a claim of patent infringement can be defeated by establishing the invalidity of the patent based upon § 102(g). *Checkpoint Sys., Inc. v. United States Int'l Trade Comm'n,* 54 F.3d 756, 761 (Fed.Cir. 1995). A patent is presumed to be valid; therefore, invalidity can be established only upon clear and convincing evidence. *Id.* The party asserting invalidity must establish that (1) there was a prior invention; and (2) such prior invention was not abandoned, suppressed, or concealed. *Id.*

#### 1. Prior Invention

■ An invention is made when it is conceived and physically reduced to practice. 1 Peter D. Rosenberg, Patent Law Fundamentals § 10.01, at 10–5 (2d ed.2000) (hereinafter "Rosenberg"). Thus, the earliest inventor to reduce an invention to practice is ordinarily entitled to priority. *Holmwood v. Sugavanam,* 948 F.2d 1236, 1238 (Fed.Cir.1991). An actual reduction to practice is a physical embodiment of the invention that " 'actually worked for its intended purpose.' " *Id.* (quoting *Newkirk v. Lulejian,* 825 F.2d 1581, 1582 (Fed.Cir. 1987)). A reduction to practice could also be constructive, with the filing of a United States patent application. 2 Rosenberg § 10.01[1][b], at 10–18. Reduction to practice is a legal determination, not a factual one. *Holmwood,* 948 F.2d at 1238. Thus, the first to either physically make the invention or file a patent application is considered the inventor.

AVI has submitted evidence that it manufactured a physical embodiment of the Miyamoto invention,[3] meeting the limitations of the Park patents, as early as March 3, 1984, and in any event no later than August 22, 1984.[4] Frederick H.

---

**3.** Dow objects to AVI referring to the invention as its own. However, as licensee of the invention, AVI "owns" the right to practice the invention in the United States. *See generally* 3 Rosenberg § 16.01[b]. For simplicity

the invention will be referred to as belonging to AVI.

**4.** Dow objects to AVI's reference to its production of a physical embodiment of the Miyamoto patent, that is, a polyethylene foam

Collins, a former vice-president of AVI, testified to his presence during the manufacture of polyethylene foam using an isobutane blowing agent and a GMS stability control agent on March 3, 1984. (AVI Rule 7.1 Statement Ex. 12, at 14–16.) Robert G. Hooper, a project engineer for AVI at the time, testified that AVI engineers produced a polyethylene foam using an isobutane blowing agent and a GMS stability control agent in the laboratory on March 3, 1984. *Id.* Ex. 13, at ¶ 5; Ex. 19, at 264–68, 423–24. He further testified that on two occasions, the first being March 3, 1984, he "hooked up" an isobutane tank to manufacturing equipment and provided ventilation during production of polyethylene foam using an isobutane blowing agent and a GMS stability control agent. *Id.* Ex. 19, at 264–68, 423–24. Ralph Nettleton, a production supervisor for AVI at the time, testified that he was present and observed, on March 3, 1984, AVI manufacture polyethylene foam using an isobutane blowing agent and a GMS stability control agent. *Id.* Ex. 17, at 18–30. An AVI test sheet shows production of polyethylene foam using an isobutane blowing agent and a GMS stability control agent on March 3, 1984. *Id.* Ex. 18.

Dow attempts to call into question whether the March 3, 1984, trial run used normal butane ("n-butane") rather than isobutane. Dow points to the occasional reference to "butane" by witnesses, as well as to the March 3, 1984, test sheet which lists "butane" as the blowing agent. *See id.* Ex. 18. This is insufficient, however, to create a genuine issue of material fact as to whether n-butane was used, rather than isobutane. The test sheet references

"isobutane" twice, and never mentions "n-butane." The witnesses just listed all clearly state, in no uncertain terms, that they witnessed the production of polyethylene foam using isobutane as a blowing agent. Even the person who actually hooked up the isobutane tank so testified. *Id.* Ex. 19, at 264–68. 423–24. Dow has submitted no evidence that n-butane was used. Given the overwhelming evidence submitted by AVI that isobutane was used on March 3, 1984, and the lack of contrary evidence, no genuine issue remains for trial.

Moreover, on August 22, 1984, AVI produced polyethylene foam on a production line using an isobutane blowing agent and a GMS stability control agent. *Id.* ¶ 27. Dow does not contest the accuracy of this fact. (*See* Dow Response to AVI Rule 7.1 Statement.)

■ Dow argues that the invention was not AVI's, since JSP conceived the invention, in Japan, and constructively reduced the invention to practice in the United States by filing the Miyamoto patent application. Further, Dow contends that because JSP constructively reduced the invention to practice by filing the Miyamoto patent application, AVI's later reduction to practice has no meaning. Should Dow's argument be accepted, then the invention taught by the Park patent was anticipated by the Miyamoto invention, the patent application for which was filed in 1968 and granted in 1974, well before Dow's alleged conception. Moreover, Dow cites no case law that supports its proposition that the actual reduction to practice by a licensee of a United States patent holder, undertaken prior to conception by a later inventor, is ineffective to constitute prior art.[5] To the

made using isobutane as a blowing agent and a GMS stability control agent, as a "reduction to practice." For ease of readability, however, AVI's production of a physical embodiment of the Miyamoto patent will be referred to as a reduction to practice.

5. Additionally, the Federal Circuit has found that a prior inventor who has reduced the invention to practice, and then is inactive for

a long period of time, does not lose priority when the prior inventor resumes work on the invention before a later inventor reduces to practice the same concept. *Paulik v. Rizkalla,* 760 F.2d 1270, 1272 (Fed.Cir.1985). This is analogous to the situation here, where a prior inventor (JSP) reduced the invention to practice (by filing a U.S. patent application), then, after a long period of inactivity, the licensee

contrary, such reduction to practice anticipates the later concept. *See generally,* Rosenberg § 10.01. Accordingly, this line of argument by Dow is futile and additional discussion of its rejection is unnecessary.

AVI has produced clear and convincing evidence that it physically made polyethylene foam using an isobutane blowing agent and a GMS stability control agent on March 3, 1984, and on August 22, 1984. (*See* AVI Rule 7.1 Statement Ex. 12, at 14–16; Ex. 13, at ¶ 5; Ex. 17, at 18–30; Ex. 18; Ex. 19, at 264–68, 423–24.) That foam concededly meets the limitations of the Park patents. Accordingly, unless AVI abandoned, suppressed, or concealed its invention, the Park patents, reduced to practice on September 13–14, 1984, were anticipated by the AVI invention.

### 2. *Abandon, Suppress or Conceal*

■ A first inventor may lose priority to its invention if it abandons, suppresses, or conceals the invention. 35 U.S.C. § 102(g); *Checkpoint Sys., Inc.,* 54 F.3d at 761; *Paulik,* 760 F.2d at 1272. This rule is in keeping with one of the purposes of the patent law, to encourage public disclosure and to penalize "the unexcused delay or failure of a first inventor to share the 'benefit of the knowledge of [the] invention' with the public after the invention has been completed." *Checkpoint Sys., Inc.,* 54 F.3d at 761 (quoting *Paulik,* 760 F.2d at 1280).

Dow contends that the two and one-half year delay between AVI's first production of the foam in March 1984 and commercialization of the foam in September 1986 was unreasonable and therefore constitutes abandonment, suppression or con-

cealment for the purposes of § 102(g). Dow further argues that the invention was not publicly disclosed until commercialization.

Dow misconstrues the law.[6] Public disclosure via commercialization is helpful to negate a finding of abandonment, suppression or concealment where the invention has not otherwise been publicly disclosed. *See, e.g., Checkpoint Sys., Inc.,* 54 F.3d at 762. "One way a prior inventor may avoid the disqualifying effect of § 102(g) is by promptly filing a patent application claiming the invention." *Id.* at 761. Thus, where a patent claims the invention, public disclosure is not at issue. The patent is a public disclosure. *Cf. id.* at 763 (noting that "[f]iling a patent application is not the only way to bring the benefit of knowledge of an invention to the public").

Here, the Miyamoto patent was issued in 1974. The invention was disclosed to the public at that time. Dow cites no case law indicating that after a patent has been issued, abandonment, suppression or concealment becomes an issue. AVI did not abandon, suppress, or conceal the invention.

### C. Reexamination of '933 Patent

■ Dow requested reexamination of the '933 patent, questioning its patentability over prior art references, including the Miyamoto patent. The Patent and Trademark Office issued a reexamination certificate on September 10, 1996. Dow contends that AVI cannot overcome the presumption of validity of the '933 patent, in light of the reexamination by the Patent and Trademark Office.

---

of the prior inventor (AVI) resumes work on the invention. Priority to the prior inventor (JSP/AVI) is not lost when a later inventor (Dow) reduces to practice the same concept, after the licensee of the prior inventor (AVI) resumes work on the invention.

**6.** The case law cited by Dow, and the reasoning set forth in its brief, applies when there is

a priority contest, but no patent application has been filed by the first inventor. *See, e.g., Checkpoint Sys., Inc.,* 54 F.3d at 761–63 (finding that a prior inventor who had not filed a patent application had not abandoned the invention, therefore affirming the invalidation of a subsequent patent under § 102(g)).

Reexamination before the Patent and Trademark Office and litigation in the courts are distinct proceedings. *Ethicon, Inc. v.. Quigg*, 849 F.2d 1422, 1427 (Fed. Cir.1988). In reexamination proceedings, there is no presumption of validity and the standard of proof is preponderance of the evidence. *Id.* Additionally, the proof in reexamination proceedings is limited to review of prior art patents and printed publications. *Id.* On the other hand, in court proceedings there is a presumption of validity, and the party seeking to invalidate a patent must do so by clear and convincing evidence. *Id.* Further, the court may consider grounds other than prior art patents and printed publications in determining patent validity. *Id.; American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1360 (Fed.Cir.)(court must consider "[a]ll evidence bearing on the validity issue, whether considered by the [Patent and Trademark Office] or not"), *cert. denied*, 469 U.S. 821, 105 S.Ct. 95, 83 L.Ed.2d 41 (1984). There is "nothing untoward about the [Patent and Trademark Office] upholding the validity of a reexamined patent which the district court later finds invalid. This is essentially what occurs when a court finds a patent invalid after the [Patent and Trademark Office] has granted it." *Ethicon, Inc.*, 849 F.2d at 1428. While "deference is due the Patent and Trademark Office decision to issue the patent with respect to evidence bearing on validity which it considered but no such deference is due with respect to evidence it did not consider." *American Hoist & Derrick Co.*, 725 F.2d at 1360. The burden of proving invalidity by clear and convincing evidence remains unchanged, despite any decision of the Patent and Trademark Office. *Id.*

In addition to the prior art Miyamoto patent, AVI has submitted proof establishing that it practiced the Miyamoto patent in 1984, prior to Dow's reduction to practice of the concept. This evidence was not before the Patent and Trademark Office. *See Ethicon, Inc.*, 849 F.2d at 1426 (Patent and Trademark Office may only consider prior art patents and printed publications). Thus, no deference is due to the Patent and Trademark Office's determination that the '933 patent remained patentable despite the Miyamoto prior art.

## IV. CONCLUSION

AVI clearly and convincingly established that it produced polyethylene foam using isobutane as a blowing agent and a GMS stability control agent in March and August 1984, thereby anticipating the invention taught in the Park patents and first reduced to practice by Dow in September 1984. Abandonment, suppression, or concealment were not in issue, as the invention was publicly disclosed by Miyamoto patent filed in 1968 and granted in 1974. Deference is not accorded to the Reexamination Certificate issued by the Patent and Trademark Office on the '933 patent, as it could not consider the evidence of AVI's prior reduction to practice of the invention. AVI has established by clear and convincing evidence that the claims-at-issue of the Park patents are invalid pursuant to 35 U.S.C. § 102(g) and it is therefore entitled to summary judgment on its affirmative defense brought under that section. In light of the foregoing, the cross-motion for summary judgment brought by Dow need not be analyzed. Accordingly, it is

ORDERED that

1. The claims-at-issue of U.S. Patent No. BI 4,640,933; U.S. Patent No. 4,694,-027; and U.S. Patent No. 4,663,361 are invalid;

2. AVI's motion for summary judgment on its affirmative defense that the claims-at-issue of U.S. Patent No. BI 4,640,933; U.S. Patent No. 4,694,027; and U.S. Patent No. 4,663,361 are invalid under 35 U.S.C. § 102(g) is GRANTED;

3. Dow's cross-motion for partial summary judgment is DENIED as moot; and

4. Dow's claims for infringement of each of the claims at issue in the isobutane patents are dismissed.

The Clerk of the Court is directed to enter judgment accordingly.

IT IS SO ORDERED.